USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/1/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----

QING TIAN ZHUO, on behalf of himself,
FLSA Collective Plaintiffs and the Class,

        Plaintiff,

-against-

JIA XING 39TH INC., LI XING INC., XING
WONG GOURMET INC., XING YUE INC.,
CHENG ZHONG HUANG, ZHENG JING
HUANG, XING HUANG, LIAO LILI, and
XUE YAN WANG,

        Defendants.

14-Cv-2848 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

  Plaintiff Qing Tian Zhuo brings this action on behalf of himself and other current and former tipped employees of defendants, alleging various wage and hour violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and New York Labor Law ("NYLL"), Art. 6 §§ 190 *et seq.* and Art. 19 §§ 650 *et seq.* Currently before the Court is plaintiff's motion for conditional certification of his FLSA collective action claims pursuant to 29 U.S.C. § 216(b). Because plaintiff has made the required factual showing that he and potential opt-in plaintiffs were the subjects of a common policy or plan that violated the law, plaintiff's motion is granted.

## I. BACKGROUND

  Qing Tian Zhuo has brought this action against the corporate owners and individual officers of four Szechuan Gourmet restaurants in New

York.¹ Plaintiff, a former delivery person at defendants' Szechuan Gourmet restaurant located at 1395 Second Avenue in Manhattan, alleges violations of the FLSA minimum wage, overtime, and tip credit provisions. (Compl. ¶¶ 40-52, Dkt. No. 2.)

Plaintiff alleges the following facts: During his six months of employment from October 2012 through April 2013, plaintiff, a tipped employee,² worked 11 hours per day, six or seven days per week, for a fixed daily salary of $40 per day, or roughly $3.64 per hour. (Compl. ¶¶ 23-24.) Plaintiff did not receive overtime for any hours worked in excess of forty in a work week. (*Id.* ¶¶ 29-30, 33.) Defendants paid plaintiff biweekly in cash and never furnished any wage statements. (*Id.* ¶¶ 25, 38.) Defendants also failed to provide notice that they were taking a tip credit for each payment period.³ (*Id.* ¶¶ 26, 31-32.)

Plaintiff brings his FLSA claims on behalf of himself and other similarly-situated tipped employees who worked at any of the four Szechuan Gourmet restaurants during the past three years. (*Id.* ¶¶ 12-14.) He alleges that the Szechuan Gourmet restaurants operate as a single integrated enterprise, with common ownership, joint advertising, a general manager, and freely-interchangeable staff. (*Id.* ¶ 9.) He claims that defendants applied the same wage and hour policies to the tipped employees at all four locations. (*Id.* ¶¶ 12-14, 25-33, 38.)

---

¹ The four restaurants are located at: 1395 Second Avenue, New York, NY 10021; 242 West 56th Street, New York, NY 10019; 21 West 39th Street, New York, NY 10018; and 135-15 37th Avenue, Flushing, New York 11354. (Compl. ¶¶ 6, 8.)

² A "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

³ A tip credit is the amount from employee tips that an employer may count toward his or her payment of the full federal minimum wage. *See* 29 U.S.C. § 203(m). An employer may take a tip credit for a tipped employee provided "such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee." *Id.*

Defendants deny plaintiff's allegations and oppose the conditional certification of the FLSA collective action. They maintain that the four Szechuan Gourmet restaurants are "separate entities" which are "unaffiliated" and that there is no common policy or practice applied by defendants to employees at the four restaurants. (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Conditional Collective Certification at 4-6, Dkt. No. 38.) As a result, defendants contend that plaintiff is not similarly situated to the employees of the three restaurants where he did not work and therefore conditional certification would be improper. (*Id.* at 6-7.)

## II. LEGAL STANDARD

The FLSA "was created to eliminate low wages and long hours as well as to free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well being of workers." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320 (S.D.N.Y. 2007) (internal quotation marks omitted). Accordingly, the FLSA "regulates minimum wages and overtime wages paid by employers engaged in interstate commerce." *Id.*

Pursuant to Article 16(b) of the FLSA, employees may sue on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). In *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010), the U.S. Court of Appeals for the Second Circuit endorsed the two-step approach to certification widely used by the district courts. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555. During the second step, the court evaluates "whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

3

"Neither the FLSA nor its accompanying regulations define the term 'similarly situated.'" *Fasanelli*, 516 F. Supp. 2d at 321. Bearing in mind the remedial purposes of the statute, the named plaintiff, at the first stage, must simply "make a 'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'. . . The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions' . . . but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citations omitted); *see also Fasanelli*, 516 F. Supp. 2d at 321 (calling the burden "minimal" and noting that the plaintiff need only show a "factual nexus" between his claims and the claims of those who have chosen to opt in).

Because the court is assessing the plaintiff's claims at the start of discovery, the court "need not evaluate the merits of plaintiff['s] claims in order to determine that a definable group of 'similarly situated' plaintiffs . . . exist[s]." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."). The conditional certification standard is "considerably more liberal than class certification under Rule 23" and does not require a showing of numerosity, typicality, commonality, or representativeness. *Lynch*, 491 F. Supp. 2d at 369.

Courts throughout this district "have endorsed the sending of notice early in the [FLSA] proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management." *Hoffman*, 982 F. Supp. at 262. Once the plaintiff sends court-approved notice to the potential collective members, the potential plaintiffs may "elect to opt-in pursuant to section 216(b) by filing Consent Forms with the court." *Lynch*, 491 F. Supp. 2d at 368.

4

## III. DISCUSSION

### A. Plaintiff's Motion for Conditional Certification is Granted

The Court must determine whether there is a "factual nexus" between the claims of the named plaintiff, Qing Tian Zhuo, and the putative collective such that the Court can be satisfied, based on the pleadings and any affidavits, that they were "victims of a common policy or plan that violated the law." *Fasanelli*, 516 F. Supp. 2d at 321 (internal quotation marks omitted). Zhuo's motion for conditional collective certification is supported by the allegations in his Complaint and his two declarations sworn under penalty of perjury.

In his Complaint, Zhuo asserts a colorable claim that defendants failed to pay him proper minimum wage and overtime compensation while serving as a tipped employee at the Szechuan Gourmet restaurant located at 1395 Second Avenue. (Compl. ¶¶ 24-33, 44-49.) In his first declaration, Zhuo reiterates the same allegations. (Declaration of Qing Tian Zhuo, dated January 15, 2015 ("Zhuo Decl."), Dkt. No. 34.) Consistent with the Complaint, Zhuo also avows that the Szechuan Gourmet restaurants are operated as a common enterprise under the trade name Szechuan Gourmet; that one person owns all four restaurants; and that the employees, including the kitchen staff, cashiers, servers, and manager, are "freely interchangeable" among the restaurants. (*Id.* ¶ 2; *see also* Declaration of Qing Tian Zhuo, dated March 5, 2015 ("Zhuo Suppl. Decl.") ¶ 1, Dkt. No. 41.) For instance, according to Zhuo, one individual manages all four locations. (Zhuo Suppl. Decl. ¶ 2.) In addition, plaintiff knows that at least two individuals who worked at the Second Avenue location had been transferred there from the 39th Street location. (*Id.* ¶¶ 2-3.)

"[B]ased on [plaintiff's] conversations with coworkers transferred from other locations," Zhuo declares that "[d]efendants implemented the same wage and hour policies on all tipped employees at all of the Szechuan Gourmet [r]estaurants." (Zhuo Decl. ¶ 2.) For each FLSA

5

violation—related to minimum wage, overtime, and the tip credit—Zhuo affirms that "[b]ased on [his] personal observations and conversations with coworkers, other tipped employees at the [four] Szechuan Gourmet [r]estaurants" were victims of the same illegal policies. (*Id.* ¶¶ 3-5, 7-8, 11.)

These declarations are sufficient to satisfy the "modest factual showing" that plaintiff is similarly situated to tipped employees at all four Szechuan Gourmet locations in New York. *Myers*, 624 F.3d at 555 (internal quotation marks omitted). Several courts have conditionally certified a collective of employees spanning multiple locations based on the allegations and affidavit of a single plaintiff who worked at only one location. *See Mendoza v. Ashiya Sushi 5, Inc.*, No. 12-Cv-8629, 2013 WL 5211839, at *4-5 (S.D.N.Y. Sept. 16, 2013); *Cheng Chung Liang v. J. C. Broadway Rest., Inc.*, No. 12-Cv-1054, 2013 WL 2284882, at *1 (S.D.N.Y. May 23, 2013); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12-Cv-265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012); *Harrington v. Educ. Mgmt. Corp.*, No. 02-Cv-0787, 2002 U.S. Dist. LEXIS 8823, at *5-6 (S.D.N.Y. May 17, 2002). In *Khamsiri*, the district court found that there was "sufficient indicia of the possibility of a common policy or plan . . . to meet the minimal burden plaintiff faces at this stage of the litigation" where, in addition to the testimony of the named plaintiff, the three restaurants shared signage, an entrance, and an address. 2012 WL 1981507, at *1 n.1.

Zhuo has similarly supported his motion with specific facts, which, if true, support the existence of a common policy. Specifically, he avers that the Szechuan Gourmet restaurants (1) operate under the same Chinese trade name and have the same English name, Szechuan Gourmet; (2) are owned by the same person; (3) share one general manager; and (4) freely transfer employees among the restaurants. (Zhuo Decl. ¶ 2; Zhuo Suppl. Decl. ¶¶ 1-2.) For each purported violation, Zhuo describes either observing that violation as to other employees or being told about the same violation by one or more coworkers transferred from the other Szechuan Gourmet locations. (Zhuo Decl. ¶¶ 3-5, 7-8, 11.) Zhuo's "sworn

6

statements establish the basis of [his] knowledge with specific facts," as defendants' "rotation of personnel among corporate Defendants . . . enabled [him] to meet and speak to employees at the other New York restaurants." *Santana v. Fishlegs, LLC*, No. 13-Cv-1628, 2013 WL 5951438, at *4 (S.D.N.Y. Nov. 7, 2013).[4]

Defendants' reliance on *Morales v. Plantworks, Inc.*, No. 05-Cv-2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) is unavailing. There, the district court denied the conditional certification motion because the affidavit and exhibits the plaintiffs submitted made "no reference to any . . . employee other than [the named] plaintiffs, and they ma[d]e no allegations of a common policy or plan to deny plaintiffs overtime." *Id.* at *2. By offering only "a conclusory allegation in their complaint," the plaintiffs in that litigation had failed to meet their minimal burden to show that they were similarly situated to putative collective members. *Id.* at *3.

*Bernard v. Household International, Inc.*, 231 F. Supp. 2d 433 (E.D. Va. 2002) is also inapposite. In *Bernard*, the district court found that the plaintiffs had failed to show that there were similarly-situated employees in offices outside of the state where the plaintiffs worked because the plaintiffs made no "specific allegations regarding practices in other offices . . . and [there was] no indication that the problems alleged through first-

---

[4] Defendants have failed to submit any factual evidence in opposition to plaintiff's motion apart from attaching pictures of separate websites for three of the restaurants. Even if the Court were to credit defense attorney's unsupported assertions that the restaurants are separate entities, it would only prove that there is a factual dispute as to the common ownership of the restaurants, which is not an issue before the Court at the conditional certification stage. *See Lynch*, 491 F. Supp. 2d at 368; *see also Lamb v. Singh Hospitality Grp., Inc.*, No. 11-Cv-6060, 2013 WL 5502844, at *4 (E.D.N.Y. Sept. 30, 2013) ("While Defendants argue that each of the restaurants is distinct, Plaintiffs have demonstrated that there are issues of fact regarding whether Defendants operate as a single employer . . . [which] should be determined following discovery, at the second stage of FLSA collective action certification."). The Court will decide if the collective plaintiffs are indeed similarly situated based on the facts in the record at the time of the motion for final certification. *See Myers*, 624 F.3d at 555.

hand knowledge in the two Virginia offices exist[ed] elsewhere." *Id.* at 435-36. Here, Zhuo spoke with coworkers transferred from the other New York locations, and based on those conversations and his own personal observations, he declares under penalty of perjury that other tipped employees at all four Szechuan Gourmet restaurants worked more than ten hours a day and were neither paid overtime nor compensated at the prevailing minimum wage. (Zhuo Decl. ¶¶ 2-5, 7-8, 11.) As "[l]eniency in favor of Plaintiff[] at this stage comports with the spirit of the two-step approach," the Complaint and Zhuo's declarations are sufficient to meet the "'low standard of proof' at th[is] first step." *Santana*, 2013 WL 5951438, at *4 (quoting *Myers*, 624 F.3d at 555).

## B. Court Authorization of Notice and Limited Discovery

Zhuo also seeks approval of the proposed notice attached to his motion. (*See* Notice of Pendency of Lawsuit Regarding Wages, Ex. 1 to Dkt. No. 33.) Although it is "well settled that courts may authorize notice when the Plaintiff has demonstrated that he and potential plaintiffs are similarly situated," "[n]either the statute, nor other courts, have specifically outlined what form court-authorized notice should take nor what provisions the notice should contain." *Fasanelli*, 516 F. Supp. 2d at 322-23. The contents of that notice are left to the trial court's discretion. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

At the pre-trial conference on February 11, the Court suggested various modifications to plaintiff's proposed notice and consent form. The parties are directed to meet and confer and submit an agreed-upon notice and consent form on or before April 15, 2015. If the parties cannot agree upon a proposed notice, defendants may submit a letter setting forth its objections to plaintiff's revised notice or submit an alternative version to the Court. As stated at the February 11 conference, the Court will require that the notice and consent form be sent to putative collective members in both English and Chinese, *see, e.g., Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007), and be posted in the Szechuan Gourmet

8

restaurants where putative collective members are employed, *see, e.g., Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007).

The Court also grants plaintiff's request for the discovery of contact information of putative collective members to the extent plaintiff seeks the names, telephone numbers, email addresses, mailing addresses, and employment dates of all covered employees. The Court denies plaintiff's request for the social security numbers of potential collective members, as there is no current need for that information. *See, e.g., Fasanelli*, 516 F. Supp. 2d at 324.

## IV. CONCLUSION

Because plaintiff has proffered a sufficient factual nexus between himself and the putative collective to determine that they are indeed similarly situated for purposes of this motion, his motion for conditional certification of a FLSA collective action is granted.

Dated: New York, New York
April 1, 2015

SO ORDERED:

Sidney H. Stein, U.S.D.J.